**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** )<br>100 F Street, N.E. )<br>Washington, D.C. 20549 )<br> )<br>      **Plaintiff,** )<br> )<br> **v.** )<br> )<br>**ANALOG DEVICES, INC. and** )<br>**JERALD G. FISHMAN,** )<br> )<br>      **Defendants.** )<br> ) | **Civil Action No.** |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission" or "SEC") hereby alleges as follows:

### I.

### SUMMARY

1.   During at least 1998 through 2002, Analog Devices, Inc. ("Analog" or "the company") and its CEO Jerald G. Fishman ("Fishman") engaged in an improper course of conduct involving backdating stock option grants that operated as a fraud on Analog's shareholders and resulted in Fishman and other executives, directors and employees of Analog receiving undisclosed compensation. In 1998, 1999 and 2001, Fishman caused the company to backdate stock option grants to price them below the market price of the stock on the date they were actually approved, resulting in in-the-money option grants that the company failed to properly expense as compensation costs in its financial statements. The company and Fishman failed to disclose this practice in

Analog's 1999-2002 proxy statements and related annual reports, and instead made false

and misleading statements and omissions concerning the option grants and the benefits

they provided to Analog's top officers, directors and employees. In addition, in 1999 and

again in 2000, Fishman caused the company to grant favorably-priced options to himself

and others by accelerating those grants to occur before the announcement of material

nonpublic information about the company. This practice, which was undisclosed, but

which does not form the basis of the charges in this Complaint, enhanced the company's

and Fishman's ability to provide stock option grant benefits to Analog's top officers,

directors and employees.[1]

## II.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to Sections 20(d) and

22(a) of the Securities Act of 1933 ("the Securities Act"), 15 U.S.C. §§ 77t(d) and 77v(a),

and Sections 21(d), 21(e) and 27 of the Exchange Act of 1934 ("the Exchange Act"), 15

U.S.C. §§ 78u(d), 78u(e) and 78aa. The defendants, directly or indirectly, have made use

of the means and instrumentalities of interstate commerce, of the mails, or of the facilities

of a national securities exchange in connection with the acts, practices and courses of

business alleged in this Complaint.

3.      This district is an appropriate venue for this action under Section 22 of the

Securities Act, 15 U.S.C. § 77v, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

---

[1]      The conduct that forms the basis of the violations in this Complaint are solely the instances of backdating described at paragraphs 11 through 15, 18, 20 and 25 through 27. On July 26, 2006, the Commission adopted changes to the rules requiring disclosure of executive and director compensation which, among other requirements, address disclosure concerning an issuer's practice of timing option grants in coordination with the public release of material nonpublic information

## III.

### DEFENDANTS

4.      **Analog Devices, Inc.** is a Massachusetts corporation with its principal

offices in Norwood, Massachusetts.  Founded in 1965, the company designs,

manufactures and markets high-performance integrated circuits that are used in signal

processing for industrial, communication, computer, and consumer applications.  During

the relevant period, the company's common stock was registered with the Commission

pursuant to Section 12(b) of the Exchange Act and listed on the New York Stock

Exchange under the symbol ADI.

5.      **Jerald G. Fishman**, age 60, resides in Weston, Massachusetts.  Fishman

has been the President of Analog since 1991 and its CEO since November 1996.  He is

also a member of the company's Board of Directors.  Fishman began his career with

Analog in 1971, holding a series of positions in marketing, operations and strategic

planning.  He holds undergraduate and graduate degrees in engineering, as well as an

MBA from Boston University and a law degree from Suffolk Law School.

## IV.

### FACTS

6.      In the competitive high tech industry of the late 1990s and early 2000s,

Analog, like other high tech companies, used stock options as an important means to

attract and retain employees, including executives.[2]  Analog's option grants gave the

recipients the right to purchase from the company (by "exercising" the options) a fixed

number of shares of its common stock at a fixed price (the "exercise" price) prior to

---

[2]      The options discussed in this Order are non-statutory stock options.

3

expiration of the options, which was generally 10 years from the grant date. Options granted to employees, including executives, typically vested in equal amounts on the third, fourth and fifth anniversaries of the grant date; options granted to non-employee directors typically vested on the first, second and third anniversaries of the grants. The company's ability to grant options at favorable (lower) exercise prices, which would be perceived by employees as having significant value, was a substantial part of its strategy to retain its highly skilled, professional employees.

7.      Analog awarded options to executives and other employees during this period under a shareholder-approved stock option plan that allowed the Board of Directors to establish the exercise price at the time the options were granted, and required the Board to determine when to grant the options.[3] The plan required the exercise price to be "not less than 100% of the fair market value" of the company's common stock at the time of the option grant.

8.      Analog's Compensation Committee, pursuant to authority delegated by the Board, granted the options under the plan. The Compensation Committee relied on Fishman to recommend when to make the option grants. The Committee ordinarily approved one grant date a year based on a recommendation by Fishman.[4] For each of the four grants discussed in this Complaint, Fishman recommended grants on dates corresponding to low points in Analog's stock price.

---

[3]     This plan is referred to in Analog's proxy statements and annual reports as the 1998 Stock Option Plan. Analog shareholders approved this plan on March 10, 1998.

[4]     After the Compensation Committee approved the grant, Fishman orally informed the company's Chief Financial Officer ("CFO") of the grant date and exercise price for the options. The CFO then initiated the process of generating confirmatory documents to be given to the stock option recipients.

9.      During 1998 to 2001, Analog made three option grants to officers and

employees (and one grant to directors in 2001) at lower exercise prices than were allowed

by the company's option plan. On three occasions (1998, 1999 and 2001), Fishman

caused Analog to backdate grants, resulting in options with exercise prices that were

below the market price of Analog's stock on the date the Compensation Committee

actually approved the grants. In addition, although not a basis for the charges in this

Complaint, on two occasions (1999 and 2000), Fishman accelerated or "timed" the grants

to occur in advance of Analog's public announcement of record financial results that

Fishman believed was likely to result in a material increase in Analog's stock price and

make the options immediately in-the-money and, thus, more valuable to the recipients.[5]

Although the options awarded from these practices were not immediately exercisable and

vested over a period of up to five years, the options provided Fishman and other

recipients with the benefit of lower exercise prices than they would have received had the

options been granted at-the-money or after the public announcement of favorable

financial results.[6]

---

[5]       The company had engaged in the practice of timing grants prior to the release of favorable
nonpublic financial information for years prior to the 1999 and 2000 grants that are the subject of this
Complaint. At some point during these earlier years, certain management and non-management Directors
had obtained advice from Analog's outside counsel that it was not inappropriate in the context of the
company's insider trading policies for the company to grant options on the basis of and prior to the release
of favorable nonpublic financial information. Analog's outside counsel was present at the Board meetings
in 1999 and 2000 when the Board reviewed the timed grants made by the Compensation Committee.
Analog never sought advice from its counsel about whether this practice and the benefit it provided to the
option recipients should be disclosed to the company's shareholders. Outside counsel participated in the
drafting of the relevant proxy statements but did not make recommendations concerning any such
disclosure. As noted above, this non-disclosure predated the rule changes that expressly required
disclosure concerning an issuer's practice of timing option grants in coordination with the public release of
material nonpublic information. *See supra* note 1.

[6]       Other than options granted to Fishman in 1998, which have been fully exercised, neither Fishman
nor any other Director has exercised any of the options that are the subject of this Complaint.

10.     Analog filed proxy statements and annual reports with the Commission that contained disclosures related to these option grants. Each of the company's proxy statements described the stock option compensation of Fishman and Analog's four other most highly paid executives (collectively, the "top five" officers or executives), including the grant date and exercise price of the options. The proxy statements also contained reports of Analog's Compensation Committee, which described the purpose and pricing policy of the company's stock option grants. Analog's annual reports, which incorporated the proxy statements by reference, also described the pricing policy of the company's stock option plan and the impact of that policy on the company's accounting. These proxy statements and annual reports did not disclose the benefits to option recipients and the costs to Analog from the option grant practices identified above. In each year between at least 1999 and 2002, Fishman received drafts of the company's proxy statements and annual reports, and signed the annual reports as CEO.[7]

### 1.     The 1998 Option Grant

11.     In September 1998, following a substantial downturn in the price of Analog's stock during 1998, Fishman recommended that the Compensation Committee grant stock options to employees, including senior executives.

12.     In its 1999 proxy statement, Analog disclosed to its shareholders the date on which it granted options to its senior officers and employees: "[t]he Company granted options to employees on . . . September 4, 1998." The options purported to have been

---

[7]     The disclosures made in the annual reports of the company for the reporting periods between 1998 and 2002 are incorporated by reference in registration statements that Analog filed with the Commission on Forms S-8, which registered the securities underlying the stock option grants under the company's stock option plan. These registration statements were filed on March 11, 1998, June 27, 2000, and December 14, 2001, and incorporated by reference each of the above-described annual reports and proxy statements. Analog's outside Directors and Fishman signed each of these registration statements.

granted on September 4, 1998 – the Friday before the Labor Day weekend – were given

an exercise price of $13.25 per share, the closing price of the company's stock on that

day – and the lowest closing price of Analog stock during the entire year of 1998.

13.     However, Analog's Compensation Committee actually approved the stock

option grant at a meeting on September 8, 1998, after the 4 p.m. close of trading of the

company's stock on the New York Stock Exchange. The company's stock option plan

thus required the exercise price of the options to be set at the closing price of the

company's stock on September 8, 1998, which was $14.75 per share. This price was

$1.50 per share higher than the closing price on the date reported in the company's 1999

proxy statement. Indeed, the minutes of a meeting of the full Board the next day

(September 9th), where the grants made by the Compensation Committee were reviewed,

provided that the "exercise price of such stock option grants shall be the share closing

price of the common stock of the Corporation on the New York Stock Exchange on

September 8, 1998."

14.     Although the Compensation Committee approved the options on

September 8 at that day's closing price, Fishman caused the company to record the

options as having been granted at the lower price on September 4.

15.     As a result of the misrepresentation of the grant date, the top five officers

for whom Analog disclosed stock option compensation in its proxy filings (including

Fishman who received 300,000 shares) received options priced $1.50 per share *lower*

than the closing price of Analog's stock on the date that the options were actually

granted. In total, the 6.4 million options granted to employees and senior executives

were in-the-money on the grant date by a total of $9.7 million. Fishman's options alone

7

were in-the-money by $450,000. Fishman realized the full amount of this benefit when he exercised his options and sold the underlying stock between June 2003 and January 2004. The options granted to the four other top officers were in-the-money by a combined total of $307,500. These amounts were not disclosed by Analog in its executive compensation disclosures. Instead, the proxy filing stated that the options granted to the top five officers were granted at the fair market value of the company's stock on the grant date. In addition, the company failed to report in its financial statements the compensation expense associated with the in-the-money portion of these grants, as required by generally accepted accounting principles ("GAAP"), because the Company treated the options as having been granted at fair market value on September 4. Instead, the company's annual report stated that the company granted options at not less than the fair market value at the time of grant and that it therefore did not recognize stock option expense under GAAP.[8]

### 2.    The 1999 Option Grant

16.    Analog and Fishman's goal of finding low points for the price of the stock in fixing stock option exercise prices led Fishman, in 1999 and 2000 – one of the most profitable periods in the company's history – to recommend that Analog grant stock options to employees and officers, including Fishman himself, prior to the company's release of favorable nonpublic financial information that was known to him and the

---

[8]    Under Accounting Principle Board Opinion No. 25, issuers are required to expense the intrinsic value of an option grant, generally ratably, over the vesting period of the option. An option's intrinsic value is generally defined as the amount by which the stock's market price exceeds the exercise price of the option on its grant date or "measurement date" (i.e., the date on which both the number of shares an individual employee is entitled to receive and the price of the options are known). Analog's annual reports stated that it accounted for stock option grants in accordance with APB No. 25: "The Company grants stock options for a fixed number of shares to employees with an exercise price equal to the fair value of the shares at the date of grant. The Company accounts for stock option grants in accordance with APB Opinion No. 25 . . . and, accordingly, recognizes no compensation expense for the stock option grants."

Board.

17.     At Fishman's request, the Compensation Committee met on November 29,

1999, a week earlier than the normal December Board meeting, in order to award options

prior to an expected positive earnings release. The Committee awarded a total of

7,361,550 million options to executives and employees, including 550,000 options to the

company's top five officers. Fishman alone received 300,000 options. The full Board met

the next day to review the grants made by the Compensation Committee.

18.     In addition, despite the fact that the options were approved on November 29,

1999, after the close of the market, when the closing price of the company's stock was

$57.94 per share, Fishman caused Analog to misrepresent that the options were granted on

November 30, 1999, with an exercise price corresponding to the closing price of the stock

on that day, $57.50 per share.

19.     On December 1, 1999, the company released record year-end earnings

results, which exceeded Wall Street earnings per share estimates by 5 cents per share.

The next day, analysts revised upward their price targets for the company as a result of

the earnings news. The stock price increased, climbing to above $65.00 per share in the

afternoon of December 2, 1999, a 13% increase over the grant price. In the aggregate,

the over 7 million options granted to employees and executives were in-the-money by

$55 million soon after the news was released.

20.     The company disclosed in its 1999 annual report on Form 10-K that "[t]he

Company grants stock options for a fixed number of shares to employees with an exercise

price equal to the fair value of the shares at the date of grant," while incorporating by

reference the disclosure from the 2000 proxy statement that executives were granted

options on November 30, 1999 at the "fair market value" on the grant date.[9] These

statements misrepresent the date of the actual grant.

### 3.    The 2000 Option Grant

21.    The next year, on November 10, 2000, Fishman again convened meetings

of the Compensation Committee and Board in advance of the regularly scheduled

December meetings to approve a grant of approximately 12.54 million stock options to

3,500 employees (including executives), and this time also a grant of 25,000 options to

each of the five non-employee Directors.[10] The grant included 1.39 million options

granted to the top five executives (including 600,000 options to Fishman). The meetings

again were called to grant options ahead of the release of material, favorable nonpublic

year-end earnings news (ahead of consensus estimates by 4 cents per share) that was

known to the Board at the time of the grant. The options were granted with an exercise

price of $44.50 per share, equal to the closing price of the stock on November 10, 2000.

22.    As had occurred a year earlier, the company's stock price increased

following the company's public release of record earnings, resulting in all of the options

being substantially in-the-money. The company announced its year-end earnings on

November 14, 2000. By November 15, 2000, the closing price of the stock was $63.25,

an increase of $18.75 (42%) over the November 10, 2000 closing price. In the aggregate,

---

[9]    Because this grant occurred during the company's 2000 fiscal year (October 31, 1999 – October 28, 2000), the company also made similar disclosures concerning this grant in its 2000 annual report and its 2001 proxy statement.

[10]    In years prior to this grant, options to non-employee directors were awarded under a plan that required non-employee directors to receive options granted on a fixed date each year (the anniversary of the date the director joined the Board). In early December 1999, shortly after certain directors had received option grants with a significantly higher exercise price than executives and employees had received prior to the company's December 1, 1999 earnings release, the Board decided to cancel its own option plan and grant options to directors under the employee plan (the 1998 Stock Option Plan). The Board cancelled the directors' plan in part to enable the Directors to benefit in the future from the undisclosed practice the company followed under the employee stock option plan of selecting grant dates to occur shortly before the announcement of favorable financial results.

the 12.54 million shares granted to employees, officers and directors were in-the-money by $235 million after the news was released.

### 4.    The 2001 "Salary Reduction" Option Grant

23.    During an industry-wide business slump through parts of 2001, the company undertook an across-the-board salary reduction for its employees in lieu of implementing layoffs or other cost-cutting measures. The company used a formula to determine the percentage of salary that would be surrendered by each employee, and then set out to replace that salary with a special, mid-year stock option grant. This special stock option program was authorized by a written consent of the Compensation Committee, dated as of May 17, 2001, which gave Mr. Fishman the authority to set the date of the option grant.

24.    On July 20, 2001, Analog's outside counsel spoke with members of the Compensation Committee and, by a written memorandum of that date, sent them a revised version of the May 17 written consent, requesting that they sign the new version and advising them that it replaced the earlier signed consent. As counsel's memorandum advised the Committee, "the previous consent authorized Jerry Fishman to designate the grant date of the stock options. The new (attached) Consent provides that the Compensation Committee will determine the grant date."

25.    On July 26, 2001, Analog's counsel sent the Committee members the written consent to authorize the grant, which they signed in the following days. This consent stated that the grant date was "fixed at July 18, 2001." Although the grant date included in the consent was July 18, 2001, the Committee members had not agreed on that date to grant the options. The July 18, 2001 grant date reflected on the consent was

selected by Fishman. The closing price of Analog's stock on that date was one of the lowest closing prices of the company's stock during the month in which the options were granted.

26.    Because the Compensation Committee did not grant the options until July 26, 2001, at the earliest, the options were substantially in-the-money on the date they were actually granted. The closing price of Analog's stock on July 26, 2001, was $48.27 per share, $9.21 per share higher than the $39.06 exercise price of the 1,932,766 stock options granted to Analog executives, directors and employees. By that measure, the options were in-the-money by a total of $17.8 million. Fishman's options were in-the-money by $128,608. The options granted to the four other top officers were in-the-money by a total of $210,089.

27.    The company disclosed in its 2002 annual report that "[t]he Company grants stock options for a fixed number of shares to employees with an exercise price equal to the fair value of the shares at the date of grant," while incorporating by reference the disclosures from the 2002 proxy statement that executives and directors were granted options on July 18, 2001 at the "fair market value" on the grant date. In fact, these options were not granted until July 26, 2001, at the earliest, at a price that was then *below* the fair value of the stock. In addition, the company failed to report in its financial statements the compensation expense associated with the in-the-money portion of these grants, as required by GAAP, because the company treated the options as having been granted at fair market value on July 18, 2001.

## FIRST CLAIM FOR RELIEF

*Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder*

*by Defendant Analog Devices, Inc.*

28.     The Commission realleges and incorporates by reference Paragraphs 1 through 5, 11 through 15, 18, 20, and 25 through 27, above.

29.     By engaging in the conduct described above, Analog, with scienter, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce or of the mails, or of facilities of a national securities exchange:

(a)     employed devices, schemes, or artifices to defraud;

(b)     made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

(c)     engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

30.     By reason of the foregoing, Analog has violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## SECOND CLAIM FOR RELIEF

*Violations of Section 17(a)(2) and 17(a)(3) by Defendant Fishman*

31.     The Commission realleges and incorporates by reference Paragraphs 1 through 5, 11 through 15, 18, 20, 25 through 27, and 28 through 30 above.

32.     By engaging in the conduct described above, Fishman, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails:

(a)     obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the

statements made, in the light of the circumstances under which they were made, not misleading; and

> (b)    engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

33.    By reason of the foregoing, Fishman violated Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(2) and (3).

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

> (a)    ordering Analog to pay a civil penalty in the amount of $3 million pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3);

> (b)    ordering Fishman to pay a civil penalty in the amount of $1 million pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and to pay disgorgement of $450,000, plus prejudgment interest thereon of $42,110; and

> (c)    granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated:  May 30, 2008

A. David Williams (CA Bar No. 183854)
Christopher Conte
Timothy N. England
SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, D.C. 20549-5561
(202) 551-4548 (D. Williams)
(202) 772-9231 (Fax)
*Attorneys for Plaintiff*

14

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

**I (a) PLAINTIFFS**

Securities and Exchange Commission

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    100/
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
David Williams, Esq.
100 F Street, NE
Washington, D.C. 20549-4010
(202) 551-4548

**DEFENDANTS**

Analog Devices, Inc. and Jerald G. Fishman

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Norfolk,Massachusett
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
T

Case: 1:08-cv-00920
Assigned To : Walton, Reggie B.
Assign. Date : 5/30/2008
Description: General Civil

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 4 Diversity
(Indicate Citizenship of Parties in item III)

**III CITIZEN** ...
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☒ E.  General Civil (Other) OR ☐ F.  Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☒ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

C/FJ ON BOTH

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

Securities and Exchange Commission

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _1001_
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
David Williams, Esq.
100 F Street, NE
Washington, D.C. 20549-4010
(202) 551-4548

**DEFENDANTS**

Analog Devices, Inc. and Jerald G. Fishman

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Norfolk, Massachusetts
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
T

Case: 1:08-cv-00920
Assigned To : Walton, Reggie B.
Assign. Date : 5/30/2008
Description: General Civil

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- (x) 1 U.S. Government Plaintiff
- □ 2 U.S. Government Defendant
- □ 3 Federal Question (U.S. Government Not a Party)
- □ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZEN**
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | □ 1 | □ 1 | Incorporated or Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| □ A. *Antitrust* | □ B. *Personal Injury/ Malpractice* | □ C. *Administrative Agency Review* | □ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| □ 410 Antitrust | □ 310 Airplane<br>□ 315 Airplane Product Liability<br>□ 320 Assault, Libel & Slander<br>□ 330 Federal Employers Liability<br>□ 340 Marine<br>□ 345 Marine Product Liability<br>□ 350 Motor Vehicle<br>□ 355 Motor Vehicle Product Liability<br>□ 360 Other Personal Injury<br>□ 362 Medical Malpractice<br>□ 365 Product Liability<br>□ 368 Asbestos Product Liability | □ 151 Medicare Act<br><br>**Social Security:**<br>□ 861 HIA ((1395ff)<br>□ 862 Black Lung (923)<br>□ 863 DIWC/DIWW (405(g)<br>□ 864 SSID Title XVI<br>□ 865 RSI (405(g)<br><br>**Other Statutes**<br>□ 891 Agricultural Acts<br>□ 892 Economic Stabilization Act<br>□ 893 Environmental Matters<br>□ 894 Energy Allocation Act<br>□ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

(x) **E. *General Civil (Other)* OR □ F. *Pro Se General Civil***

**Real Property**
- □ 210 Land Condemnation
- □ 220 Foreclosure
- □ 230 Rent, Lease & Ejectment
- □ 240 Torts to Land
- □ 245 Tort Product Liability
- □ 290 All Other Real Property

**Personal Property**
- □ 370 Other Fraud
- □ 371 Truth in Lending
- □ 380 Other Personal Property Damage
- □ 385 Property Damage Product Liability

**Bankruptcy**
- □ 422 Appeal 28 USC 158
- □ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- □ 535 Death Penalty
- □ 540 Mandamus & Other
- □ 550 Civil Rights
- □ 555 Prison Condition

**Property Rights**
- □ 820 Copyrights
- □ 830 Patent
- □ 840 Trademark

**Federal Tax Suits**
- □ 870 Taxes (US plaintiff or defendant
- □ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- □ 610 Agriculture
- □ 620 Other Food &Drug
- □ 625 Drug Related Seizure of Property 21 USC 881
- □ 630 Liquor Laws
- □ 640 RR & Truck
- □ 650 Airline Regs
- □ 660 Occupational Safety/Health
- □ 690 Other

**Other Statutes**
- □ 400 State Reapportionment
- □ 430 Banks & Banking
- □ 450 Commerce/ICC Rates/etc.
- □ 460 Deportation

- □ 470 Racketeer Influenced & Corrupt Organizations
- □ 480 Consumer Credit
- □ 490 Cable/Satellite TV
- □ 810 Selective Service
- (x) 850 Securities/Commodities/ Exchange
- □ 875 Customer Challenge 12 USC 3410
- □ 900 Appeal of fee determination under equal access to Justice
- □ 950 Constitutionality of State Statutes
- □ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

C/FJ ON BOTH